UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP<br><br>               Plaintiff,<br><br>vs.<br><br>THE CONSORTIUM INC., JOHN DOE 1-10 AND ABC CO. 1-10 (said names being fictitious and/or representing person(s) and/or business entity(ies) whose name(s) are unknown,<br><br>               Defendants. | **COMPLAINT** |

COMES NOW THE PLAINTIFF, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP, and through the undersigned attorneys, Hall Booth Smith, P.C., for his Complaint against Defendant, THE CONSORTIUM, INC., alleges as follows:

## PARTIES

1.      Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP (hereinafter "ATLANTIC"), is a limited liability company organized under the laws of New York, with a principal place of business at 19 West 34th Street, Suite 806, New York, New York 10001.

2.      Defendant, THE CONSORTIUM INC. (hereinafter, "CONSORTIUM"), is a corporation organized under the laws of Pennsylvania, with principal place of business at 33751 Island Avenue, 3rd Floor, Philadelphia, Pennsylvania 19153.

## JURISDICTION AND VENUE

3.      This dispute arises under 28 U.S.C. § 1332(a) because it involves diverse parties and an amount in controversy that exceeds $75,000.00.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because this action arises from agreements which provides that it shall be governed by and construed in accordance with the laws of the State of New York.

## FACTUAL BACKGROUND

5.      On September 29, 2023, ATLANTIC and CONSORTIUM entered into a Temporary Consulting Agreement, whereby ATLANTIC agreed to provide full-time temporary support services to CONSORTIUM in exchange for payment. A true and accurate copy of the Temporary Consulting Agreement is annexed hereto as **Exhibit "A."**

6.      On January 12, 2024, ATLANTIC and CONSORTIUM entered into a Services Agreement, pursuant to which ATLANTIC agreed to provide search and placement recruitment services to find personnel who fit qualifications as requested and specified by CONSORTIUM, in exchange for payment. A true and accurate copy of the Services Agreement is annexed hereto as **Exhibit "B."**

7.      CONSORTIUM owes ATLANTIC in the sum of two hundred forty-eight thousand one hundred eighty-one dollars ($248,181.00), plus fees and costs, as reflected in a certain book account maintained by Atlantic. A true and accurate copy of which is annexed hereto as **Exhibit "C."**

8.      Pursuant to the Agreements between the parties, CONSORTIUM agreed to pay ATLANTIC for the services rendered. The outstanding balance set forth in **Exhibit "C"** represents unpaid charges for those services provided by ATLANTIC and CONSORTIUM.

9.       The amount owed include a five thousand dollar ($5,000.00) administrative fee, as provided in the Temporary Consulting Agreement, which states in relevant part:

**ADMINISTRATIVE FEE**:  Client acknowledges and agrees that, if Client fails to pay any Consultant Fee or other fees or payments due and owing to Atlantic for

more than thirty (30) days after invoice, in addition to, and not a substitute for any contract or quasi-contract damages, and attorneys' fees, costs and expenses incurred by Atlantic, Atlantic also shall be entitled to recover from Client an Administrative Fee of Five Thousand Dollars ($5,000.00). . . .
*See* **Exhibit "A."**

10.    Moreover, both the Temporary Consulting Agreement and the Services Agreement provide that ATLANTIC is entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in enforcing or collecting amounts due under the Agreements, as follows:

**COSTS OF COLLECTION**:  In the event that any action, suit or other legal or administrative proceeding is instituted or commenced by Atlantic, against Client arising out of or related to any breach by Client of this Agreement (including but not limited to, non-payment of any fees due hereunder), Atlantic shall be entitled to recover from Client its actual attorney's fees, court costs and costs of collection (including, but not limited to, costs and fees of any collection agency or attorneys, accountants or experts).

*See* **Exhibit "A**.**"**

**ATTORNEY'S FEES; COSTS OF COLLECTION**:  In the event that any action, suit, or other legal or administrative proceeding is instituted or commenced by Atlantic against Client arising out of or related to a breach of the Agreement by Client (including, but not limited to, non-payment of Placement Fees), Atlantic shall be entitled to recover from Client its actual attorneys' fees, court costs, and collection (including, but not limited to costs and fees of any collection agency or attorneys) from Client.

*See* **Exhibit "B."**

11.    ATLANTIC made numerous requests for payment to Joseph E. Milewski, Vice President and Chief Financial Officer of CONSORTIUM, as well as to Ms. Melissa Usher, Ms. Lucinda Johnson, Ms. Kerrey Leonard, Ms. Janellyn Reis, and Ms. Rozelle Hunt, all of whom are associated with CONSORTIUM.

12.    On August 14, 2025, ATLANTIC first advised the aforementioned representatives of CONSORTIUM that temporary candidates would be withdrawn from their assignments as a result of the outstanding balance owed to ATLANTIC.

13.     In response, Ms. Usher replied to ATLANTIC, copying all the above-mentioned CONSORTIUM representatives, raising concerns about funders, families, and members of the change, but failed to address the outstanding amount owed to ATLANTIC for services rendered.

14.     After numerous requests for a payment, and after notice of potential legal action, on or about August 19, 2025, Mr. Joseph E. Milewski, Vice President/Chief Financial Officer of CONSORTIUM, advised ATLANTIC that they "are working on a payment plan."

15.     To date, however, no payment plan has been presented or implemented, and no payment has been made toward the outstanding balance.

16.     Thereafter, the undersigned counsel sent a demand letter to CONSORTIUM advising of the amounts owed to ATLANTIC pursuant to the Agreements and no response was provided.

17.     Despite numerous efforts by ATLANTIC to secure payment of amounts owed, CONSORTIUM refused and continues to refuse to pay the amounts due and owing.

## COUNT I
## BREACH OF CONTRACT

18.     Plaintiff repeats and realleges paragraphs 1 through 13 as if fully set forth  herein.

19.     The Temporary Consulting Agreement between Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP and Defendant THE CONSORTIUM INC., is a valid and enforceable contract supported by consideration under which Plaintiff provided services to Defendant in exchange for payment.

20.     The Services Agreement between Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP and Defendant THE CONSORTIUM INC., is a valid and enforceable contract supported by consideration under which Plaintiff provided services to Defendant in exchange for payment.

4

21.     Plaintiff ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP fully performed all obligations under the requirement Agreements.

22.     Despite numerous attempts and written demands to Defendant for payment of monies owed, Defendant acknowledges its obligation but refused and continues to refuse to perform.

23.     As a direct and proximate result of Defendant's breach, Plaintiff has suffered and continue to suffer damages in the amount to exceed $75,000.00.

**COUNT II**
**ACCOUNT STATED**

24.     Plaintiff repeats and realleges paragraphs 1 through 19 as if fully set forth  herein.

25.     Plaintiff ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP has regularly billed Defendant, THE CONSORTIUM INC., for the outstanding balance of two hundred forty-three thousand one hundred eighty-one dollars ($243,181.00). Defendant, THE CONSORTIUM INC., has received, accepted, and retained the invoices and account statements without objection, yet has failed and refused to make payment despite due demand.

26.     Defendant, THE CONSORTIUM INC., received and retained said invoices without objection within a reasonable time, thereby assenting to the correctness of the amount stated.

27.     Due to Defendant, THE CONSORTIUM INC.'s failure to pay within thirty (30) days after invoice, an administrative fee in the amount of five thousand dollars ($5,000.00) attached pursuant to the Temporary Consulting Agreement.

28.     Defendant, THE CONSORTIUM INC., has failed to pay the outstanding balance of two hundred forty-eight thousand one hundred eighty-one dollars ($248,181.00), which remains due and owing.

## COUNT III
## UNJUST ENRICHMENT

29.     Plaintiff repeats and realleges paragraphs 1 though 27 as if full set forth herein.

30.     Defendant, THE CONSORTIUM INC., has received and continue to receive the benefit of services provided by Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP, without providing payment as required under the parties' Agreements.

31.     Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP, is entitled to recover the value of the services provided to Defendant, THE CONSORTIUM INC., for which Defendant, THE CONSORTIUM INC., has failed to compensate Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP.

## COUNT IV
## ATTORNEYS' FEES PURSUANT TO THE AGREEMENTS

32.     Plaintiff repeats and realleges paragraphs 1 through 30 as if fully set forth  herein.

33.     The Agreements expressly provides that, in the event that any action, suit or legal proceeding is instituted or commenced by Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP, against Defendant, THE CONSORTIUM INC., arising out of the breach, Plaintiff ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP shall be entitled to recover actual attorneys' fees and costs from Defendant, THE CONSORTIUM INC..

34.     Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP, has incurred and continues to incur attorneys' fees and cots in connection with the action, which was necessitated due to Defendant, THE CONSORTIUM INC.'s failure to pay the amounts owed.

35.    Plaintiff, ATLANTIC RESOURCE PARTNERS HC LLC d/b/a THE ATLANTIC GROUP, is therefore entitled to recover actual attorneys' fees and costs from Defendant, THE CONSORTIUM INC., pursuant to the Agreements.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court enter judgment in its favor and against Defendant, awarding:

a.    On the first and second cause of action against Defendant, awarding Plaintiff damages in the amount of two hundred forty-eight thousand one hundred eighty-one dollars ($248,181.00);

b.    On the third cause of action, awarding , including, but not limited to exemplary and punitive damages, and all other appropriate damages arising out of Defendant's continued failure to perform;

b.    On the fourth cause of action for actual attorneys' fees and costs to the extent provided under the Agreements;

c.    Pre-judgment and post-judgment interest on the amounts award; and

d.    Granting such other relief as to the Court may seem just and proper.

Dated: Paramus, New Jersey
November 3, 2025

Respectfully Submitted,

*Marc R. Wilner*

MARC R. WILNER ESQ.
HALL BOOTH SMITH, P.C.
15 East Midland Avenue, Suite 3A
Paramus, New Jersey 07652
Tel: (201) 614-6350

# EXHIBIT A

ATLANTIC GROUP
NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | ISELIN, NJ

9/29/23

The Consortium Inc.
3751 Island Ave, 3rd Floor
Philadelphia, PA 19153

Re: Temporary Consulting Agreement

Dear Dr. Kline,

Thank you for choosing Atlantic Resource Partners Healthcare LLC ("Atlantic"). We appreciate the opportunity to work with The Consortium Inc, ("Client"). This letter agreement memorializes the terms of our agreement with you.

SCOPE OF ASSIGNMENT

Atlantic will arrange for its employee named on Exhibit A hereto (the "Consultant") to provide full-time temporary support services (the "Services") to Client's related function for the period and at the rates indicated on Exhibit A.

TERMS AND CONDITIONS:

INDEPENDENT CONTRACTOR: Atlantic is providing the Services as an independent contractor. Neither Atlantic nor the Consultant shall have any employment or Partnership relationship with Client. Atlantic shall be solely responsible for (i) providing and administering any salary or other benefits to which the Consultant is entitled, (ii) making all appropriate tax, social security, Medicare and other payroll withholding deductions and payments, (iii) obtaining worker's compensation insurance for the Consultant and any other required disability insurance and (iv) making all required unemployment tax payments.

DUTIES: The Consultant shall perform such duties as are reasonably requested by Client consistent with the assignment to provide support to Client's related functions. The Consultant will abide by Client's internal policies that are applicable to the performance of the work and are communicated by Client to Consultant.

TIME APPROVAL: An authorized representative of Client shall verify the Consultant's timesheets on a weekly basis. The Consultant's work schedule will vary according to the needs of the Client, as reasonably determined between Client and Consultant.

CONSULTANT FEE:  Client shall pay Atlantic the fees as set forth on Exhibit A for the services of Consultant (the "Consultant Fee").  Client is responsible for paying the Consultant Fee whenever Atlantic provides a Consultant to Client during the Term.

ADMINISTRATIVE FEE:  Client acknowledges and agrees that, if Client fails to pay any Consultant Fee or other fees or payments due and owing to Atlantic for more than thirty

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | ISELIN, NJ

(30) days after invoice, in addition to, and not as a substitute for any contract or quasi-contract damages, and attorneys' fees, costs and expenses incurred by Atlantic, Atlantic also shall be entitled to recover from Client an Administrative Fee of Five Thousand Dollars ($5,000.00). The Administrative Fee compensates Atlantic for its additional costs, expenses and damages associated with recovery of Client's debt, including the expense of Atlantic initiating the debt collection process against Client, time and opportunity costs of Atlantic resulting from Atlantic having to allocate personnel and resources to collecting such debt, and damages to Atlantic's reputation due to Client's nonpayment. Client acknowledges and agrees that the Administrative Fee is not a penalty and is, rather, an estimate made by the parties, as of the Effective Date, of additional damages Atlantic will sustain due to Client's nonpayment, and that the amount fixed is proportionate to Atlantic's probable loss.

SALES TAX: All Placement Fees payable hereunder are exclusive of, and Client is solely responsible for, and shall pay all sales taxes which may be due and owing in connection with the payment of the Placement Fee and the provision of the Services. Any and all sales taxes shall be remitted to Atlantic by Client at the time of payment of Placement Fees.

REFERENCES: Atlantic will furnish the Consultant's reference list to Client promptly upon request so that Client can independently verify references if it determines to do so.

TERMINATION: Client may terminate the Services on a minimum of seven (7) days prior written notice to Atlantic.

INVOICES: Invoices will be submitted weekly and are due and payable immediately upon Client's receipt thereof.

MACHINERY: Atlantic employees are not authorized to drive or operate machinery or motorized equipment and Client shall not require any Consultant to do so.

CASH/NEGOTIABLE INSTRUMENTS: Atlantic employees are not authorized to handle cash, negotiable instruments or other valuables and Client shall not require any Consultant to do so.

AUTHORIZATION: Atlantic employees are not allowed, under any circumstances, to render any opinion on behalf of The Atlantic or Client with regard to financial statements, nor sign any financial statements or tax returns on behalf of any Atlantic Client and Client shall not require any Consultant to do so.

LEGAL COMPLIANCE: Client will provide a safe and commercially reasonable working environment for the Consultant and shall comply with all laws, rules and regulations with respect to the work environment in connection with the engagement of Consultant and provision of the Services.

PERMANENT HIRE: If Client or any affiliate of Client (i) hires or otherwise engages a Consultant within two years after the last day of the performance of Services hereunder by such Consultant, or (ii) otherwise hires or engages a party introduced to Client by Atlantic



ATLANTIC GROUP
NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | ISELIN, NJ

(regardless of whether or not Client ever utilizes the services of such party) within two years from the date of introduction, a placement fee in the amount determined below will be due from Client to Atlantic ("Placement Fee"). Client shall be obligated to pay the Placement Fee whether the Consultant or the party introduced to Client by Atlantic (such Consultant or party introduced to Client by Atlantic is hereafter referred to as a "Hired Candidate") is hired on a permanent or temporary, part-time or full-time or consulting basis whether or not as employee, consultant or independent contractor.

The Placement Fee will be based upon the total salary and guaranteed bonus (if any) at the time of engagement and will be calculated as follows in the table below:

| Length of Service of Hired Candidate | Placement Fee |
|---|---|
| 400 Hours or less (including Hired Candidates who were introduced by Atlantic but did not perform services for Client) | 25% of total first year Guaranteed Compensation (as defined below) |
| 401 - 800 Hours worked | 20% of total first year Guaranteed Compensation |
| 801-1200 Hours worked | 15% of total first year Guaranteed Compensation |
| More than 1201 Hours worked | 10% of total first year Guaranteed Compensation |

"Guaranteed Compensation" means the sum of the annual base salary of the Hired Candidate and any guaranteed incentive compensation or bonus (including sign-on, guaranteed, minimum discretionary, performance-based or other bonus), whether paid in cash, securities, or other equity, phantom equity, options or other items of value that Client pays such Hired Candidate or promises to pay such Hired Candidate for services attributable to such Hired Candidate's first year of employment with, or engagement by, Client, regardless of whether Client actually pays Hired Candidate all sums during the first year of Hired Candidate's employment. If a bonus is incalculable at the time such Hired Candidate begins employment with Client or if such Hired Candidate is to be paid in a manner other than in cash, then an estimate determined jointly by Client and Atlantic of the amount in cash or value of such bonus shall be used to calculate any Placement Fee. Client agrees to provide to Atlantic such documentation as Atlantic may request, from time to time, regarding each Hired Candidate's aggregate Guaranteed Compensation for such Hired Candidate's first year of employment, employment status with Client, and dates of employment, including any Hired Candidate's offer letter, employment agreement, payroll records and independent valuation of any securities or other non-cash compensation paid or promised to be paid to Hired Candidate.

The Placement Fee shall be due and payable to Atlantic upon receipt of invoice.

If a Candidate hired on a permanent basis, without first being hired on a consulting basis, resigns or if Client terminates such Hired Candidate's employment or engagement for any reason other than general reduction of workforce, within the first ninety (90) days of Hired Candidate's employment or engagement by Client, and provided that Atlantic received the

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | ISELIN, NJ

Placement Fee within (30) days of Hired Candidate's start date, Atlantic shall re-fill the
position for which such Hired Candidate was Hired free of charge.

CONFIDENTIALITY: Atlantic recognizes that Client has and will have business affairs,
future plans, information regarding current and potential portfolio companies, technical
information, and other proprietary information (collectively, "Information"), which are
valuable, special and unique assets of Client and/or as to which Client (or its affiliate) is
subject to a confidentiality undertaking. Client may provide Atlantic with access to
Information that Client determines in its sole discretion should be provided to facilitate the
performance of the Services as directed by Client. Atlantic agrees not to use any
Information for its own benefit, or divulge, disclose or communicate in any manner (other
than as required by law) any Information to any third party without the prior written consent
of Client.

REPRESENTATIONS: Atlantic represents that it has communicated to the Consultant that
(i) the Consultant is not entitled to any special consideration for an offer of temporary or
permanent employment from Client and (ii) Consultant is employed by Atlantic and not
Client, therefore the Consultant will not be eligible to participate in any benefits programs
offered to employees of Client.


WORK PRODUCT: As between Client, the Consultant and Atlantic, any and all
analyses, evaluations, models, recommendations and data developed by the Consultant
pursuant to this Agreement, or other work product, shall be the sole property of Client.

INDEMNIFICATION:
      a.  Atlantic shall defend, indemnify, and hold harmless Client [and its
          officers, directors, employees, agents, successors, and permitted assigns
          (each, a "Client Indemnitee") from and against all losses, damages,
          liabilities, deficiencies, actions, judgments, interest, awards, penalties,
          fines, costs or expenses of whatever kind, including reasonable attorney's
          fees and the cost of enforcing any right to indemnification hereunder and
          the cost of pursuing any insurance providers ("Losses")] arising out of or
          resulting from:

              i.  Bodily injury, death of any person, or damage to real or tangible,
                  personal property resulting from the willful, fraudulent, or
                  negligent acts or omissions of Atlantic; or

            ii.  Atlantic's breach of any representation, warranty, or obligation of
                  Atlantic set forth in this Agreement.

      b.  Client shall defend, indemnify, and hold harmless Atlantic and its officers,
          directors, employees, agents, successors, and permitted assigns from and
          against all Losses arising out of or resulting from:

ATLANTIC GROUP
NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | ISELIN, NJ

    i.  Bodily injury, death or any person, or damage to real or tangible, personal property resulting from the negligent or willful acts of omissions of Client; or

    ii.  Client's breach of any representation, warranty, or obligation of Customer in this Agreement.

c.  The party seeking indemnification hereunder shall promptly notify the indemnifying party in writing of any third-party action ("Action") for which indemnification is sought and cooperate with the indemnifying party at the indemnifying party's sole cost and expense. The indemnifying party shall immediately take control of the defense and investigation of such Action and shall employ counsel of its choice reasonably acceptable to the indemnified party to handle and defend the same, at the indemnifying party's sole cost and expense. The indemnifying party shall not settle any Action in a manner that adversely affects the rights of the indemnified party without the indemnified party's prior written consent, which shall not be unreasonably withheld or delayed. The indemnified party's failure to perform any obligations under this Section 9 shall not relieve the indemnifying party of its obligations hereunder,  except to the extent that the indemnifying party can demonstrate that it has been materially prejudiced as a result of such failure. The indemnified party may participate in and observe the proceedings at its own cost and expense.

d.  Notwithstanding anything to the contrary in this Agreement, the indemnifying party is not obligated to indemnify, hold harmless, or defend the indemnified party against any claim (whether direct or indirect) such claim or corresponding losses arise out of or result from the indemnified party's:

    i.  negligence or more culpable act or omission (including recklessness or willful misconduct); or

    ii.  bad faith failure to comply with any of its obligations set forth in this Agreement.

COSTS OF COLLECTION: In the event that any action, suit or other legal or administrative proceeding is instituted or commenced by Atlantic, against Client arising out of or related to any breach by Client of this Agreement (including, but not limited to, non-payment of any fees due hereunder), Atlantic shall be entitled to recover from Client its actual attorney's fees, court costs and costs of collection (including, but not limited to, costs and fees of any collection agency or attorneys accountants and experts).

WAIVER OF CONTRACTUAL RIGHTS: The failure of either party to enforce any provision of this letter agreement shall not be construed as a waiver or limitation of a party's right to subsequently enforce and compel strict compliance with every other provision of this letter agreement.

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | ISELIN, NJ

GOVERNING LAW: This letter agreement shall be governed by and construed in accordance with the laws of the State of New York.

ASSIGNMENT: Neither party may assign this agreement without the prior written consent of the other party.

ENTIRE AGREEMENT: This letter agreement is the sole and total agreement of the undersigned parties with respect to the Services and supersedes any previous documents, conversations, or oral understanding related to this letter agreement which are not consistent with or contained in it. This letter agreement may be amended only by a writing signed by all the parties hereto.

Please do not hesitate to contact me if you have any questions or additional needs. Thank you for trusting your consulting needs to Atlantic. As always, your complete satisfaction is our top priority.

Sincerely,

*David Yoo*

David Yoo
Senior Managing Director
Atlantic Resource Partners Healthcare LLC
dyoo@atlantic-grp.com
646-541-5748

**ACKNOWLEDGED AND AGREED**:

The Consortium Inc.

By: *Melissa Usher, MSHRD, SHRM-CP*
Name: Melissa Usher
Title: Director, Human Resources.

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | ISELIN, NJ

## Exhibit A

**TEMP RATES:**
- MD: $200+
  - Psychiatrist: $275 - $325
- NP / PA: $115 - $165
  - Psych NP: $145 - $165
- RN: $80 - $85
- LPN: $65
- LCSW: $60+
- LMSW: $55+
- MSW: $45-50
- BSW: $38 - $42

**Positions outside the listed above can be agreed upon as needed

# EXHIBIT B

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | HOLMDEL, NJ

## SERVICES AGREEMENT

This Services Agreement ("Agreement"), entered into on January 12, 2024 ("Effective Date") by and between Atlantic Resource Partners LLC ("Atlantic"), located at 19 West 34th Street, Suite 806, New York, NY 10001 and The Consortium Inc. ("Client"), located at 3751 Island Ave, 3rd Floor Philadelphia, PA 19153 (collectively "The Parties")

1.  <u>Services</u>. Atlantic shall provide to Client search and placement recruitment services to find personnel who fit qualifications as requested and specified by Client ("Services").

2.  <u>Term</u>.

    a.  The term of this Agreement shall commence on the Effective Date and shall continue until either party to this agreement terminates pursuant to the Paragraph 4 of this Agreement ("Term").

3.  <u>Placement Fee</u>.

    a.  Client shall pay the Placement Fee (defined below) for each candidate introduced to Client by Atlantic ("Candidate") and hired or otherwise engaged by Client in any capacity ("Hire", "Hired", "Hires" or "Hiring", as the case may be). Client shall pay the Placement Fee (defined below) regardless of whether Client Hires a Candidate as an employee, consultant, independent contractor or otherwise, regardless of whether Client retains the Candidate on a full-time or part-time basis, if the Hire of such Candidate occurs within twelve (12) months after Atlantic introduces a Candidate to Client. If Client engages a Candidate for whom Atlantic has arranged or assisted in coordinating an interview (in-person or phone, video conference or other means of electronic communication) Atlantic will have the right to represent that candidate and be deemed to have introduced such candidate to Client, whether or not the Candidate was presented to Client from another source, and Atlantic shall be entitled to a Placement Fee if such Candidate is Hired. For purposes of this Paragraph 3, Client includes Client and any of its affiliates, subsidiaries, related persons, partners, owners, members, shareholders, directors, officers, employees, and entities under joint or common control with Client. Client's obligation to pay any and all Placement Fees hereunder shall survive termination of this Agreement.

    b.  For each Candidate Hired by Client (a "Hired Candidate"), Client shall pay Atlantic a placement fee of eighteen percent (18%) of the "Total Compensation" for the first year of employment or engagement for such Hired Candidate (the "Placement Fee"). "Total Compensation" means the sum of the annual base salary of the Hired Candidate and any guaranteed or targeted incentive compensation or bonus (including sign-on, guaranteed, minimum or targeted discretionary, performance-based or other bonus), whether paid in cash, securities, or other equity, phantom equity, options or other items of value that Client pays such Hired Candidate or

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | HOLMDEL, NJ

promises to pay such Hired Candidate for services attributable to such Hired Candidate's first year of employment with Client, regardless of whether Client actually pays Hired Candidate all sums during the first year of Hired Candidate's employment. If a bonus is incalculable at the time such Hired Candidate begins employment with Client or if such Hired Candidate is to be paid in a manner other than in cash, then an estimate determined jointly by Client and Atlantic of the amount in cash or value of such bonus shall be used to calculate any Placement Fee. Client agrees to provide to Atlantic such documentation as Atlantic may request, from time to time, regarding each Hired Candidate's aggregate Total Compensation for such Hired Candidate's first year of employment, employment status with Client, and dates of employment, including any Hired Candidate's offer letter, employment agreement, payroll records and independent valuation of any securities or other non-cash compensation paid or promised to be paid to Hired Candidate.

c.     The Placement Fee shall be due and payable to Atlantic within thirty (30) days after Hired Candidate's start date with Client.

d.     If a Hired Candidate resigns or if Client terminates such Hired Candidate's employment or engagement for any reason other than general reduction of workforce, within the first ninety (90) days of Hired Candidate's first date of employment or engagement (the "Start Date") by Client, and provided that Atlantic has received the Placement Fee within (30) days of Hired Candidate's Start Date, Atlantic shall re-fill the position for which such Hired Candidate was Hired free of charge.

e.     All Placement Fees payable hereunder are exclusive of, and Client is solely responsible for, and shall pay all sales taxes which may be due and owing in connection with the payment of each Placement Fee and the provision of the Services by Atlantic. Any and all sales taxes shall be remitted to Atlantic by Client at the time of payment of Placement Fees.

4.     <u>Termination</u>.

a.     Either party may terminate this Agreement for any reason upon thirty (30) days advance written notice to the other party.

b.     Either party may terminate this Agreement immediately for Cause. For purposes of this Agreement, "Cause" means any one or more of the following with respect to either party: (i) material breach of this Agreement that remains uncured, if curable, after fifteen (15) days of written notice to the other party of such breach; or (ii) such party files or has filed a petition for voluntary or involuntary bankruptcy or seeks similar relief from insolvency, makes an assignment for benefit of its creditors, has a receiver appointed for all or a substantial part of its business or assets, or otherwise admits in writing to its inability to meet debts as they become due.

ATLANTIC GROUP
NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | HOLMDEL, NJ

5.    <u>Equal Employment Opportunity; Non-Discrimination</u>. Atlantic represents and agrees that it is an equal opportunity employer and that it will introduce candidates to Client based on merit alone, without regard to race, color, national origin, ethnicity, age, legally-protected disability status, sex, sexual orientation, gender identity, religion, veterans' status, or other classification protected by federal, state and local laws prohibiting workplace discrimination. Atlantic agrees not to interfere with the protected rights of an individual to file a charge, testify, assist or participate in any manner in an investigation, hearing, or proceeding under applicable laws prohibiting employment discrimination or workplace harassment.

6.    <u>Confidentiality</u>.

  a.    In performing the Services, Atlantic may acquire non-public, proprietary and confidential information or trade secrets of Client ("Client Confidential Information"). Atlantic agrees to hold Confidential Information in strict confidence, and will not sell, assign, transfer, or otherwise disseminate such Client Confidential Information, or give or disclose such Client Confidential Information to third parties, or use such Client Confidential Information for any purpose other than as necessary to render Services to Client. Atlantic shall advise its employees, agents and candidates who will be granted access to confidential information that they are obligated to keep such information confidential. However, with respect to any prospective Hire, it is the responsibility of Client to secure (either directly or through specific, individualized request and instruction to Atlantic) a confidentiality or nondisclosure agreement in a form satisfactory to Client.

  b.    In receiving the Services, Client may acquire non-public, proprietary and confidential or trade secrets of Atlantic. Client agrees to hold Atlantic Confidential Information in strict confidence, and will not sell, assign, transfer, or otherwise disseminate such Atlantic Confidential Information, or give or disclose such Atlantic Confidential Information to third parties, or use such information for any purpose other than as necessary to receive Services from Atlantic. Client shall advise its employees, agents and candidates who will be granted access to Atlantic Confidential Information that they are obligated to keep such information confidential. Further, Client expressly agrees to keep confidential the identity of each candidate referred to Client by Atlantic until such candidate becomes a Hire. Client will not refer such potential Hire to any third party for the purpose of such third party Hiring such potential Hire.

7.    <u>Attorney's Fees; Costs of Collection.</u> In the event that any action, suit, or other legal or administrative proceeding is instituted or commenced by Atlantic against Client arising out of or related to a breach of this Agreement by Client (including, but not limited to, non-payment of Placement Fees), Atlantic shall be entitled to recover from Client its actual attorneys' fees, court costs, and costs of collection (including, but not limited to costs and fees of any collection agency or attorneys) from Client.

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | HOLMDEL, NJ

8.    Disclaimer of Warranties.   EXCEPT AS SPECIFICALLY PROVIDED IN THIS
AGREEMENT, THE SERVICE AND ANY MATERIALS OR INFORMATION
PROVIDED BY ATLANTIC TO CLIENT ARE PROVIDED "AS IS", WITHOUT
WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT
LIMITED TO WARRANTIES OF PERFORMANCE, MERCHANTABILITY,
FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, OMISSIONS,
COMPLETENESS, CURRENTNESS AND DELAYS.  CLIENT KNOWINGLY AND
VOLUNTARILY WAIVES ANY AND ALL CLAIM(S) AGAINST ATLANTIC AND
ITS AFFILIATES FOR DAMAGES RELATING TO THE SERVICES ARISING OUT
OF ANY OF THE ABOVE DESCRIBED WARRANTIES. FURTHER, IN NO EVENT
SHALL ATLANTIC AND/OR ITS AFFILIATES BE LIABLE TO CLIENT FOR ANY
CLAIM(S) RELATING IN ANY WAY TO (i) A DECISION MADE OR ACTION
TAKEN BY ANY PARTY IN RELIANCE UPON INFORMATION PROVIDED AS
PART OF THE SERVICES OR CONTAINED IN ANY MATERIALS; OR (ii) ANY
LOST PROFITS OR OTHER CONSEQUENTIAL, EXEMPLARY, INCIDENTAL,
INDIRECT OR SPECIAL DAMAGES RELATING IN WHOLE OR IN PART TO THE
SERVICES,   EVEN IF ATLANTIC AND/OR ITS AFFILIATES HAVE BEEN
ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.    Indemnification.

   a.   Atlantic shall defend, indemnify, and hold harmless Client and its officers,
   directors, employees, agents, successors, and permitted assigns (each, a "Client
   Indemnitee") from and against all losses, damages, liabilities, deficiencies,
   actions, judgments, interest, awards, penalties, fines, costs or expenses of
   whatever kind, including reasonable attorney's fees and the cost of enforcing any
   right to indemnification hereunder and the cost of pursuing any insurance
   providers ("Losses") arising out of or resulting from:

      i.   Bodily injury, death of any person, or damage to real or tangible, personal
      property resulting from the willful, fraudulent, or negligent acts or
      omissions of Atlantic; or

      ii.  Atlantic's breach of any representation, warranty, or obligation of Atlantic
      set forth in this Agreement.

   b.   Client shall defend, indemnify, and hold harmless Atlantic and its officers,
   directors, employees, agents, successors, and permitted assigns from and against
   all Losses arising out of or resulting from:

      i.   Bodily injury, death or any person, or damage to real or tangible, personal
      property resulting from the negligent or willful acts of omissions of Client;
      or

      ii.  Client's breach of any representation, warranty, or obligation of Customer
      in this Agreement.



    c.   The party seeking indemnification hereunder shall promptly notify the indemnifying party in writing of any third party action ("Action") for which indemnification is sought and cooperate with the indemnifying party at the indemnifying party's sole cost and expense. The indemnifying party shall immediately take control of the defense and investigation of such Action and shall employ counsel of its choice reasonably acceptable to the indemnified party to handle and defend the same, at the indemnifying party's sole cost and expense. The indemnifying party shall not settle any Action in a manner that adversely affects the rights of the indemnified party without the indemnified party's prior written consent, which shall not be unreasonably withheld or delayed. The indemnified party's failure to perform any obligations under this Section 9 shall not relieve the indemnifying party of its obligations hereunder, except to the extent that the indemnifying party can demonstrate that it has been materially prejudiced as a result of such failure. The indemnified party may participate in and observe the proceedings at its own cost and expense.

    d.   Notwithstanding anything to the contrary in this Agreement, the indemnifying party is not obligated to indemnify, hold harmless, or defend the indemnified party against any claim (whether direct or indirect) such claim or corresponding losses arise out of or result from the indemnified party's:

        i.   negligence or more culpable act or omission (including recklessness or willful misconduct); or

       ii.   bad faith failure to comply with any of its obligations set forth in this Agreement.

10.   <u>Notices</u>. Any notice of any kind which either party may desire or may be required to serve on the other party in connection with this Agreement must be in writing and shall be deemed duly given and received when delivered personally, when sent by facsimile transmission or email (in each case with electronic confirmation of receipt), or two business days after being deposited for next-day delivery with FedEx or another internationally-recognized overnight delivery service, all charges prepaid, as specified below:

    a.  If to the Atlantic, to:

    Atlantic Resource Partners LLC
    19 West 34th Street, Suite 806
    New York, NY 10001
    Attn: David Yoo
    Tel: 646-541-5748
    Email: dyoo@atlantic-grp.com

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | HOLMDEL, NJ

If to Client, to:

The Consortium Inc.
3751 Island Ave, 3rd Floor
Philadelphia, PA 19153
Attn: Dr. Kline
Tel:
Email: kkline@consortium-inc.org

11.    Additional Provisions.

a.    The rights and obligations set forth in Paragraphs 3, 6, 7, 8 and 9 herein shall survive the expiration or termination of this Agreement.

b.    Each party represents to the other party that it:

i.    is a legal entity duly organized and validly existing under the laws of the jurisdiction in which it is registered or in which its principal office is located, as the case may be;

ii.    has all necessary power and authority to enter into this Agreement and perform its obligations hereunder; and

iii.    when executed and delivered by such party, this Agreement will constitute a legal, valid and binding obligation of such party that is enforceable in accordance with its terms hereunder.

c.    Neither party may assign this Agreement or any rights herein without the prior written consent of the other party, which consent shall not be unreasonably withheld. A waiver of any provision of this Agreement will be effective only if in writing and signed by a duly authorized representative of the party against which the waiver is to be construed. The failure or delay of either party to enforce any provision of this Agreement or any right or remedy contained herein shall not constitute a waiver of future enforcement of that or any other provision, right or remedy.

d.    If any provision of this Agreement is held to be invalid, the parties agree that such invalidity shall not affect the validity of the remaining provisions of this Agreement and that they shall not undertake to negotiate in good faith a substitute valid provision that most closely approximates the intentions and economic effect of the invalid provision, but only in the most minimal manner necessary to make such terms valid and enforceable.

e.    This agreement is for the sole benefit of the parties hereto, their respective successors and permitted assigns, and nothing herein shall confer any beneficiary rights or other benefit or remedy in any client, customer, Affiliate, shareholder or partner of either party or any other third party.



ATLANTIC GROUP
NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | HOLMDEL, NJ

f.      The parties acknowledge that the relationship between them shall be considered at all times as independent contractors.  Neither party shall have the authority to enter

into any contract on behalf of the other party or otherwise to bind the other party to any legal obligation.

g.      This Agreement, including any exhibits, fee schedules, or other schedules referenced herein and attached hereto, shall constitute the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior proposals, negotiations and other communications between the parties, whether oral, written, electronic or otherwise.  This Agreement may only be amended, modified, supplemented or superseded by an agreement in writing signed by duly authorized representatives of both parties.

h.      This Agreement and all disputes or controversies arising out of or relating to this Agreement or the transactions contemplated hereby shall be governed by, construed, and interpreted in accordance with the laws of the State of New York without reference to conflicts of law principles.  New York State or New York federal courts shall have exclusive jurisdiction over all controversies arising out of or relating to this Agreement or the transactions contemplated herein.  The parties irrevocably waive any objection, including any objection based on the grounds of lack of venue or forum non-convenient, which they may now or hereafter have to the bringing of any action or proceeding in such jurisdictions based on any such controversy.  EACH OF THE PARTIES IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY CLAIM, DEMAND OR ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN.

i.      This Agreement may be executed by the parties hereto in counterparts, each of which shall be considered an original for all purposes.

j.      This Agreement constitutes the entire agreement between The Parties and with respect to the subject matter hereof, and supersedes all prior agreements, oral or written, with respect to such subject matter

ATLANTIC GROUP

NEW YORK CITY | LONDON | PHILADELPHIA | BOSTON | CHICAGO
STAMFORD, CT | BLUE BELL, PA | HOLMDEL, NJ

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth opposite their respective signatures.

ATLANTIC RESOURCE PARTNERS LLC

*David Yoo*                                    4/4/2024

By:                                             DATE

The Consortium Inc.

*Melisa Usher, USHRO, SHRM-CP*           4/4/2004

By:                                             DATE

# EXHIBIT C

| Invoice Date | Invoice Number | Consultant/Week Worked | Due Date | Open Balance |
|---|---|---|---|---|
| 08/26/2024 | 45806 | Dantzler 8/24 | 09/25/2024 | 817.00 |
| 08/26/2024 | 45822 | Davis 8/24 | 09/25/2024 | 1,575.00 |
| 08/26/2024 | 45842 | Robinson 8/24 | 09/25/2024 | 630.00 |
| 09/02/2024 | 45873 | Davis 8/31 | 10/02/2024 | 1,575.00 |
| 09/02/2024 | 45874 | Robinson 8/31 | 10/02/2024 | 945.00 |
| 09/02/2024 | 45875 | Daniels & Dantzler 8/31 | 10/02/2024 | 3,720.00 |
| 09/09/2024 | 45942 | Daniels 9/7 | 10/09/2024 | 1,440.00 |
| 09/09/2024 | 45960 | Dantzler 9/7 | 10/09/2024 | 1,536.00 |
| 09/09/2024 | 45963 | Moore 9/7 | 10/09/2024 | 1,120.00 |
| 09/09/2024 | 45966 | Davis 9/7 (ReBill) | 10/09/2024 | 1,260.00 |
| 09/09/2024 | 45967 | Robinson 9/7 (ReBill) | 10/09/2024 | 1,260.00 |
| 09/16/2024 | 45990 | Moore 9/14 | 10/16/2024 | 1,400.00 |
| 09/16/2024 | 46014 | Daniels & Dantzler 9/14 | 10/16/2024 | 3,312.00 |
| 09/16/2024 | 46026 | Davis 9/14 | 10/16/2024 | 1,575.00 |
| 09/16/2024 | 46027 | Robinson 9/14 | 10/16/2024 | 1,575.00 |
| 09/16/2024 | 46028 | Parmer 9/14 | 10/16/2024 | 600.00 |
| 09/23/2024 | 46073 | Robinson 9/21 | 10/23/2024 | 1,575.00 |
| 09/23/2024 | 46074 | Parmer 9/21 | 10/23/2024 | 1,460.00 |
| 09/23/2024 | 46075 | Daniels & Dantzler 9/21 | 10/23/2024 | 3,240.00 |
| 09/23/2024 | 46097 | Davis 9/21 | 10/23/2024 | 1,575.00 |
| 09/30/2024 | 46120 | Davis 9/28 | 10/30/2024 | 1,575.00 |
| 09/30/2024 | 46121 | Parmer 9/28 | 10/30/2024 | 900.00 |
| 09/30/2024 | 46132 | Robinson 9/28 | 10/30/2024 | 714.00 |
| 09/30/2024 | 46133 | Daniels 9/28 | 10/30/2024 | 1,848.00 |
| 10/07/2024 | 46188 | Davis 10/5 | 11/06/2024 | 1,260.00 |
| 10/07/2024 | 46189 | Robinson 10/5 | 11/06/2024 | 1,575.00 |
| 10/07/2024 | 46215 | Parmer 10/5 | 11/06/2024 | 1,500.00 |
| 10/07/2024 | 46216 | Daniels 10/5 | 11/06/2024 | 1,584.00 |
| 10/14/2024 | 46235 | Davis 10/12 | 11/13/2024 | 1,575.00 |
| 10/14/2024 | 46236 | Daniels 10/12 | 11/13/2024 | 1,800.00 |
| 10/14/2024 | 46254 | Robinson 10/12 | 11/13/2024 | 1,260.00 |
| 10/14/2024 | 46255 | Parmer 10/12 | 11/13/2024 | 1,500.00 |
| 10/28/2024 | 46406 | Davis 10/26 | 11/27/2024 | 1,575.00 |
| 10/28/2024 | 46407 | Robinson 10/26 | 11/27/2024 | 1,575.00 |
| 10/28/2024 | 46408 | Ermilus, Daniel J 10/26 | 11/27/2024 | 2,785.00 |
| 10/28/2024 | 46409 | Daniels 10/26 | 11/27/2024 | 1,884.00 |
| 11/04/2024 | 46445 | Davis 11/02 | 12/04/2024 | 1,575.00 |
| 11/04/2024 | 46446 | Robinson 11/02 | 12/04/2024 | 1,575.00 |
| 11/04/2024 | 46447 | Daniels 11/02 | 12/04/2024 | 1,488.00 |
| 11/04/2024 | 46469 | Parmer 11/2 | 12/04/2024 | 1,500.00 |
| 11/04/2024 | 46459 | Ermilus, Daniel J 11/02 | 12/04/2024 | 1,425.00 |
| 12/02/2024 | 46722 | 11/30/2024 Davis | 01/01/2025 | 945.00 |
| 12/02/2024 | 46723 | 11/23/2024 Parmer | 01/01/2025 | 1,500.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/02/2024 | | | | | | 128.00 |
| 12/02/2024 | 46742 | 11/30 Robinson | 01/01/2025 | | | 945.00 |
| 12/02/2024 | 46743 | 11/23/2024 Ermilus & Parmer | 01/01/2025 | | | 1,755.00 |
| 12/09/2024 | 46796 | 12/7 Davis | 01/08/2025 | | | 1,428.00 |
| 12/09/2024 | 46797 | 12/7 Robinson | 01/08/2025 | | | 1,260.00 |
| 12/09/2024 | 46798 | 12/7 Daniels | 01/08/2025 | | | 1,440.00 |
| 12/09/2024 | 46826 | 12/7 Ermilus & Parmer | 01/08/2025 | | | 2,925.00 |
| 12/23/2024 | 46932 | 12/21/24 Parmer | 01/22/2025 | | | 1,500.00 |
| 12/23/2024 | 46955 | 12/21 Daniels | 01/22/2025 | | | 1,824.00 |
| 12/30/2024 | 47033 | 12/28 Davis | 01/29/2025 | | | 1,260.00 |
| 12/30/2024 | 47034 | 12/28 Robinson | 01/29/2025 | | | 1,260.00 |
| 12/30/2024 | 47035 | 12/28 Ernilus and Parmer | 01/29/2025 | | | 2,340.00 |
| 12/30/2024 | 47036 | 12/28 Daniels | 01/29/2025 | | | 1,440.00 |
| 01/06/2025 | 47084 | 1/4 Daniels | 02/05/2025 | | | 1,440.00 |
| 01/06/2025 | 47100 | 1/4 Davis | 02/05/2025 | | | 1,260.00 |
| 01/06/2025 | 47101 | 1/4 Robinson | 02/05/2025 | | | 1,260.00 |
| 01/06/2025 | 47103 | 1/4 Ermilus & Parmer | 02/05/2025 | | | 2,340.00 |
| 01/13/2025 | 47169 | 1/11/2025 Ermilus | 02/12/2025 | | | 1,425.00 |
| 01/13/2025 | 47146 | 1/11/2025 Daniels | 02/12/2025 | | | 1,800.00 |
| 01/13/2025 | 47145 | 1/11/2025 _Parmer | 02/12/2025 | | | 1,500.00 |
| 01/13/2025 | 47144 | 1/11/2025 Robsinson | 02/12/2025 | | | 1,575.00 |
| 01/13/2025 | 47143 | 1/11/2025 Davis | 02/12/2025 | | | 1,575.00 |
| 01/20/2025 | 47219 | 1/18/2025 Davis | 02/19/2025 | | | 1,575.00 |
| 01/20/2025 | 47220 | 1/18/2025 Daniels | 02/19/2025 | | | 720.00 |
| 01/20/2025 | 47246 | 1/18/2025 Robinson | 02/19/2025 | | | 1,575.00 |
| 01/20/2025 | 47247 | 1/18/2025 Ernilus and Parmer | 02/19/2025 | | | 2,925.00 |
| 01/27/2025 | 47309 | 1/25/2025 Davis | 02/26/2025 | | | 1,260.00 |
| 01/27/2025 | 47310 | 1/25/2025 Robinson | 02/26/2025 | | | 1,260.00 |
| 01/27/2025 | 47330 | 1/25/2025 Ernlius | 02/26/2025 | | | 1,140.00 |
| 02/03/2025 | 47361 | 2/1/2025 Davis | 03/05/2025 | | | 1,575.00 |
| 02/03/2025 | 47378 | 2/1/2025 Robinson | 03/05/2025 | | | 1,575.00 |
| 02/03/2025 | 47386 | 2/1/2025 Ernilus and Parmer | 03/05/2025 | | | 3,005.00 |
| 02/10/2025 | 47440 | 2/8/25 Davis | 03/12/2025 | | | 1,575.00 |
| 02/10/2025 | 47453 | 2/8/25 Robinson | 03/12/2025 | | | 1,575.00 |
| 02/10/2025 | 47454 | 2/8/25 Ernilus and Parmer | 03/12/2025 | | | 2,445.00 |
| 02/17/2025 | 47488 | Davis, Shadia M2/15/25 | 03/19/2025 | | | 1,575.00 |
| 02/17/2025 | 47489 | Ermilus, Daniel J2/15/25 | 03/19/2025 | | | 2,825.00 |
| 02/17/2025 | 47515 | Robinson, Jeffrey C2/15/25 | 03/19/2025 | | | 1,260.00 |
| 02/24/2025 | 47558 | 2/22/2025 | 03/26/2025 | | | 1,260.00 |
| 02/24/2025 | 47570 | 2/22/2025 | 03/26/2025 | | | 1,260.00 |
| 02/24/2025 | 47571 | 2/22/2025 | 03/26/2025 | | | 2,340.00 |
| 03/03/2025 | 47589 | 3/1/25 | 04/02/2025 | | | 1,425.00 |
| 03/03/2025 | 47605 | 3/1/25 | 04/02/2025 | | | 1,575.00 |
| 03/03/2025 | 47606 | 3/1/25 | 04/02/2025 | | | 1,260.00 |
| 03/03/2025 | 47623 | 3/1/25 | 04/02/2025 | | | 1,020.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 03/10/2025 | | 47621 | 3/8/2025 | | 04/09/2025 | 1,425.00 |
| 03/10/2025 | | 47642 | 3/8/2025 | | 04/09/2025 | 1,260.00 |
| 03/10/2025 | | 47668 | 3/8/2025 | | 04/09/2025 | 1,560.00 |
| 03/10/2025 | | 47677 | 3/8/2025 | | 04/09/2025 | 1,575.00 |
| 03/17/2025 | | 47738 | 3/15/25 | | 04/16/2025 | 1,575.00 |
| 03/17/2025 | | 47739 | 3/15/25 | | 04/16/2025 | 1,220.00 |
| 03/17/2025 | | 47751 | 3/15/25 | | 04/16/2025 | 1,140.00 |
| 03/24/2025 | | 47783 | 3/22/2025 | | 04/23/2025 | 3,150.00 |
| 03/24/2025 | | 47784 | 3/22/2025 | | 04/23/2025 | 1,425.00 |
| 03/24/2025 | | 47834 | 3/22/2025 | | 04/23/2025 | 945.00 |
| 03/24/2025 | | 47835 | 3/22/2025 | | 04/23/2025 | 1,500.00 |
| 03/31/2025 | | 47877 | 3/29/25 | | 04/30/2025 | 1,575.00 |
| 03/31/2025 | | 47878 | 3/29/25 | | 04/30/2025 | 1,575.00 |
| 03/31/2025 | | 47879 | 3/29/25 | | 04/30/2025 | 2,325.00 |
| 04/07/2025 | | 47958 | 4/5/2025 | | 05/07/2025 | 1,575.00 |
| 04/14/2025 | | 48019 | 4/12/25- Davis, Shadia | | 05/14/2025 | 1,575.00 |
| 04/14/2025 | | 48020 | Robinson, Jeffrey- 4/05/25 | | 05/14/2025 | 1,575.00 |
| 04/14/2025 | | 48021 | Ermilus, Daniel-4/05 & 4/12 | | 05/14/2025 | 2,850.00 |
| 04/14/2025 | | 48052 | Robinson, Jeffrey C;R;4/12/25 | | 05/14/2025 | 945.00 |
| 04/21/2025 | | 48096 | 4/19/25-Davis, Shadia | | 05/21/2025 | 1,260.00 |
| 04/21/2025 | | 48097 | 4/19/25-Robinson, Jeffrey | | 05/21/2025 | 1,575.00 |
| 04/21/2025 | | 48098 | 4/19/25-Ermilus, Daniel | | 05/21/2025 | 1,425.00 |
| 04/28/2025 | | 48158 | 4/26/25-Davis, Shadia | | 05/28/2025 | 1,575.00 |
| 04/28/2025 | | 48159 | 4/26/25 | | 05/28/2025 | 1,575.00 |
| 04/28/2025 | | 48160 | 4/26/25 | | 05/28/2025 | 1,425.00 |
| 05/05/2025 | | 48200 | 5/3/25 | | 06/04/2025 | 1,425.00 |
| 05/05/2025 | | 48226 | 5/3/25 | | 06/04/2025 | 1,575.00 |
| 05/05/2025 | | 48227 | 5/3/25 | | 06/04/2025 | 1,575.00 |
| 05/12/2025 | | 48303 | 5/10 | | 06/11/2025 | 1,575.00 |
| 05/12/2025 | | 48320 | 5/10 | | 06/11/2025 | 1,425.00 |
| 05/19/2025 | | 48403 | 17-May | | 06/18/2025 | 1,575.00 |
| 05/19/2025 | | 48404 | 17-May | | 06/18/2025 | 1,425.00 |
| 05/19/2025 | | 48414 | 17-May | | 06/18/2025 | 3,150.00 |
| 05/26/2025 | | 48462 | 5/24/2025 | | 06/25/2025 | 1,575.00 |
| 05/26/2025 | | 48489 | 5/24/2025 | | 06/25/2025 | 1,425.00 |
| 06/02/2025 | | 48550 | Davis, Shadia M;5/31 | | 07/02/2025 | 1,260.00 |
| 06/02/2025 | | 48551 | Robinson, Jeffrey C;5/31 | | 07/02/2025 | 2,835.00 |
| 06/02/2025 | | 48561 | Ermilus, Daniel J;5/31 | | 07/02/2025 | 1,140.00 |
| 06/09/2025 | | 48605 | 6/7 | | 07/09/2025 | 1,575.00 |
| 06/09/2025 | | 48634 | 6/7 | | 07/09/2025 | 1,425.00 |
| 06/16/2025 | | 48678 | 6/14 | | 07/16/2025 | 1,575.00 |
| 06/16/2025 | | 48712 | 6/14 | | 07/16/2025 | 1,425.00 |
| 06/16/2025 | | 48721 | 6/14 | | 07/16/2025 | 3,150.00 |
| 06/23/2025 | | 48754 | 6/21/2025 | | 07/23/2025 | 1,260.00 |
| 06/23/2025 | | 48782 | 6/21/2025 | | 07/23/2025 | 1,260.00 |

| 06/23/2025 | 48763 | 21-Jun | 07/23/2025 | 1,140.00 |
|---|---|---|---|---|
| 06/30/2025 | 48836 | 28-Jun | 07/30/2025 | 1,575.00 |
| 06/30/2025 | 48865 | 28-Jun | 07/30/2025 | 1,425.00 |
| 07/07/2025 | 48901 | Davis, Shadia M;R 6/28-7/5 | 08/06/2025 | 1,260.00 |
| 07/07/2025 | 48931 | 5-Jul | 08/06/2025 | 2,520.00 |
| 07/07/2025 | 48958 | 5-Jul | 08/06/2025 | 1,140.00 |
| 07/14/2025 | 49019 | 12-Jul | 08/13/2025 | 1,575.00 |
| 07/14/2025 | 49020 | 12-Jul | 08/13/2025 | 855.00 |
| 07/21/2025 | 49077 | 7/19 | 08/20/2025 | 1,575.00 |
| 07/21/2025 | 49117 | 7/19 | 08/20/2025 | 1,425.00 |
| 07/28/2025 | 49173 | Davis, Shadia M;07/26/2025 | 08/27/2025 | 1,575.00 |
| 07/28/2025 | 49174 | Ermilus, Daniel J;07/26/2025 | 08/27/2025 | 1,425.00 |
| 07/28/2025 | 49202 | Robinson, Jeffrey C;07/19/2025 | 08/27/2025 | 2,520.00 |
| 07/28/2025 | 49204 | Robinson, Jeffrey C;07/12/2025 | 08/27/2025 | 1,575.00 |
| 08/04/2025 | 49233 | Davis, Shadia M;08/02/2025 | 09/03/2025 | 1,575.00 |
| 08/04/2025 | 49263 | Ermilus, Daniel J;08/02/2025 | 09/03/2025 | 1,425.00 |
| 08/04/2025 | 49280 | Robinson, Jeffrey C;08/02/2025 | 09/03/2025 | 168.00 |
| 08/11/2025 | 49322 | Davis, Shadia M;08/09/2025 | 09/10/2025 | 1,575.00 |
| 08/11/2025 | 49343 | Ermilus, Daniel J;08/09/2025 | 09/10/2025 | 1,425.00 |
| 08/18/2025 | 49409 | Davis, Shadia M;08/16/2025 | 09/17/2025 | 1,260.00 |
| 08/18/2025 | 49410 | Ermilus, Daniel J;08/16/2025 | 09/17/2025 | 1,140.00 |
| | | | | 243,181.00 |